# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA
## Las Vegas Division

CENTER FOR BIOLOGICAL DIVISIONAL DIVERSITY, *et al.*,

    Plaintiffs,

v.

TOM VILSACK, *et al.*,

    Defendants.

Case No. 2:13-cv-1785-RFB-GWF

## **REMEDIAL ORDER**

Upon review of Plaintiffs' motion for summary judgment and Defendants' cross-motion for summary judgment, and as informed by the parties' submissions during supplemental briefing concerning the appropriate remedy, the Court previously GRANTED Plaintiffs' motion in part and entered judgment for Plaintiffs on Claim 2. Today, the Court AMENDS the judgment, and REMANDS this matter to Defendant United States Department of Agriculture ("USDA") and its sub-agency, Defendant Animal and Plant Health Inspection Service ("APHIS"), with the following instructions and conditions imposed on Defendants during the remand period:

    1.    Within 15 months, Defendants shall have taken the following steps in order to comply with their obligations under section 7(a)(1) of the Endangered Species Act (ESA):

- Appoint lead coordinator, define purpose and need of the program, collect and review pertinent literature, initiate inter-agency and intra-agency collaborations, develop pertinent maps, request FWS assistance, and initiate evaluation of the beetle as a potential pest of concern under the Plant Protection Act

- Initiate a review of existing data, develop a predictive spread model, assess data gaps, and if necessary develop a technical information working group

- Solicit partners from other agencies and organizations for project scoping and evaluation

- Finalize a list of projects and measures that APHIS will consider for its program

- Publish a notice of proposed programmatic alternatives and solicit public comment on the notice

- Submit a biological assessment to FWS and initiate informal consultation, and publish a draft environmental assessment for public comment

- Complete review of all public comments, and issue final decision and final environmental assessment

2. Defendants shall file with the Court status updates every six months from the date of this order informing the Court and the parties as to Defendants' progress on remand towards achieving compliance with the Court's order and section 7(a)(1) of the ESA. Should any obstacles arise as to which Defendants have a good faith basis for requesting relief from the Court or extending any of the deadlines set forth in this order, Defendants may file a motion with the Court explaining the reasons for the request. However, due to Defendants' longstanding failure to comply with section 7(a)(1) of the ESA and the need for Defendants to timely address the worsening status of the highly endangered flycatcher, the Court will only grant relief for good cause shown.

3. Although Defendants retain discretion to adopt those programs or measures that satisfy Defendants' obligations under section 7(a)(1) of the ESA at the conclusion of the remand process—so long as any such program actually meets the requirements of this statutory provision—the Court ORDERS Defendants to, at minimum, consider and analyze, during the decision making process on remand, the following measures:

- Preparing a programmatic Plan—in compliance with NEPA and in consultation with FWS—outlining the specific measures, tools, and collaborative approaches that USDA and APHIS will take to comply with section 7(a)(1) of the ESA, consistent with the comprehensive multi-State eradication plans that Defendants have prepared for other non-native, invasive beetle species such as the Asian longhorned beetle, *see* 81 Fed. Reg. 15,677 (Mar. 24, 2016);

- Funding intensive third-party riparian restoration efforts or otherwise facilitating the mass planting of native vegetation such as cottonwoods and willows at high-risk and medium-risk sites within the flycatcher's occupied habitat (i.e., those sites that surveys show are composed primarily of tamarisk and which are already invaded or are projected to be invaded by the beetle within the next three years) to ensure that suitable substitute habitat exists to overcome the effects of the beetles in these areas, including but not limited to:

    - Middle Rio Grande River, including sites at the Elephant Buttes Reservoir and the Bosque del Apache National Wildlife Refuge;

    - Gila River (entire reach);

    - San Pedro River, including sites from the Narrows to the Gila River confluence;

    - Bill Williams River, including sites at the Alamo Lake margin, the Big Sandy confluence, and the Santa Maria confluence;

    - Burnt Springs/Colorado River confluence within Grand Canyon National Park managed by the National Park Service;

    - Colorado River Mile 274 within Grand Canyon National Park managed by the National Park Service;

    - Pearce Ferry within the Lake Mead National Recreation Area managed by the National Park Service;

    - Cottonwood Cove on the western shore of Lake Mohave within the Lake Mead National Recreation Area managed by the National Park Service;

- o Lands within the Fort Mohave Indian Reservation along the Colorado River above and adjoining Topock Marsh and the Havasu Wildlife Refuge;
- o Colorado River, including sites at the Chemehuevi Indian Reservation below Lake Havasu;
- o Virgin River (already invaded by beetles), including sites at Mesquite, Mormon Mesa, Littlefield, and St. George; and
- o Muddy River (already invaded by beetles), including sites at Overton Wildlife Management Area to Lake Mead.
- o Lower Colorado River, including sites from Glen Canyon Dam to Lake Mead, Davis Dam to Parker Dam, and Parker Dam to Imperial Dam;
- o Verde River, including sites from Horseshoe Lake to Salt River;
- o Roosevelt Lake;
- o Santa Maria River, including sites upstream from U.S. Highway 93 and from Date Creek to Alamo Lake;
- o Big Sandy, including sites from the USGS gage to Alamo Lake; and
- o Lower Tonto Creek.

- Compiling and synthesizing the results of survey and data collection efforts to date to better understand the beetle's past and projected movements into flycatcher habitat;

- Funding the timely GIS mapping of tamarisk and native riparian cover across the southwestern United States—and specifically throughout the flycatcher's occupied range—to assist in directing restoration efforts to those locations most in need of native vegetative pockets to help withstand the effects of beetle invasion;

- Invoking APHIS's authority under the Plant Protection Act, or USDA's broader authority under other laws to collaborate with Federal, State, and local authorities, in order to prohibit or at least strongly discourage any further **intra-state** movement, distribution, or release of beetles, as a means of slowing the beetle's spread into farther reaches of flycatcher habitat;

- Collaborating with FWS and other agencies to streamline the ESA permitting process for third parties engaged in restoration work to benefit flycatchers and their habitat;

- Working cooperatively with, and providing restoration funding for, established watershed partnerships that have already developed detailed restoration plans;

- Ensuring that funding streams are in easily accessible structures such as block grants administered by the National Fish and Wildlife Foundation or a similar entity, rather than through cost share programs;

- Funding and facilitating a long-term centralized and standardized information repository concerning the beetle, its spread, vegetative resources in the Southwest, and the flycatcher's status;

- Any other long-term measures, tools, strategies, and campaigns that would, consistent with section 7(a)(1) of the ESA, benefit the flycatcher's survival and recovery prospects and that could be taken by Defendants either acting alone or in concert with other Federal, State, local, or private stakeholders in the region.

The Court further ORDERS that, although the Court will retain jurisdiction to oversee Defendants' compliance with this order during the remand period and with issuance of Defendants' section 7(a)(1) conservation program, this Order constitutes the Court's final appealable judgment as to the merits of the parties' cross-motions for summary judgment. Accordingly, if no appeal is filed, within ninety (90) days of this Order Plaintiffs shall submit any motion for attorneys' fees and costs or, alternatively, a request for an extension of time if the parties are in ongoing negotiations at that time to resolve the fee matter without intervention of the Court.

DATED this 19th day of June, 2018.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE